Ensminger v. Horn.

---

### Alexander Ensminger et al. v. H. J. Horn et al.

1. REWARDS—*Parties Claiming Must Have Acted with Knowledge of.*—To every contract there must be mutual assent, and as there can be no assent to that of which a party has never heard, there can be no claim to a reward when the services on which the claim is founded were rendered in ignorance of the reward.

Bill of Interpleader.—Appeal from the Circuit Court of Henry County; the Hon. HIRAM BIGELOW, Judge, presiding. Heard in this court at the December term, 1896. Affirmed. Opinion filed June 26, 1897.

## STATEMENT OF THE CASE.

On the night preceding the 4th day of May, 1895, the State Bank of Orion, Henry county, Illinois, was burglarized, and $4,500 in cash stolen. On the morning of the 4th of May, three men boarded the east bound early passenger train as it passed through Orion, upon the R. I. & P. R. R., paid their fare to different points up the road, and when they arrived in Galva all left the train.

The appearance of the men, their actions and conversation while on the train, and their leaving the train at the same place and before they had reached their destination, caused the conductor to send to headquarters at Rock Island by telegram a report of the occurrence.

The bank officials upon discovering the robbery obtained a description of the three men from H. J. Horn, the conductor, and S. T. Murphy, the baggageman, and offered a reward for the arrest and conviction of the robbers, in the following words and figures which were printed on a postal card and circulated :

"Robbery.    $500 Reward.

ORION, ILL., May 4, 1895.

The State Bank of Orion was robbed by experts last night, the safe was blown open with nitro-glycerine and all the cash taken—$1,500 gold; $650 silver, and $2,350 currency.

Three suspicious characters boarded the early morning train on the R. I. & P. One man heavy set, full face, beard about a week's growth, weight about 185 pounds, brown clothes. One man small and slim, black moustache, thin face, weight about 140 pounds, blue clothes. Third man about six feet two inches, dark moustache, weight about 170 pounds, wore soft fedora hat, long coat, black clothes; carried cheap broken grip that appeared heavy.

$500 reward will be paid for the arrest and conviction of the robbers, or a porportionate amount for any one of them, also twenty-five per cent of all money found and returned. By order of the Board of Directors."

During the night preceding Sunday, May 12, 1895, Charles A. May, a policeman, and Alexander Ensminger, a private watchman, arrested three men who were found in a box car at Taylorville, Christian county, Illinois, and confined them in the city prison. On the following morning on going to the prison, Warren R. Eltzroth, the chief of police, found that said prisoners had in their possession a full set of burglars' tools.

Finding the burglars' tools in possession of the men a notice was sent to Chicago and St Louis daily papers. On May 13th the cashier read an account of the arrest and description of the men in the Chicago Tribune and mailed one of the postal cards to the chief of police of Taylorville. Eltzroth wired back that he had the men and to send parties to identify them. On the 16th of May, the sheriff of Henry county, with Horn and Murphy, arrived in Taylorville, and Horn and Murphy identified the prisoners as the men who had boarded their train at Orion on the morning of the 4th of May.

Eltzroth, Ensminger and May, during the time intervening between the arrest of the prisoners and the arrival of Quinn, had sworn out warrants against the prisoners for having burglars' tools in their possession in order to detain them, and had had their photographs taken.

Eltzroth took with him the kit of burglars' tools and the photographs and returned with Quinn and accompanied him and the state's attorney of Henry county to Orion, and upon fitting them to the vault door of the bank they found that the tools were the same as those with which the job was done at Orion.

At the June term, A. D. 1895, of Henry County Circuit Court, the parties arrested at Taylorville, were indicted under the names of Lawrence J. Sullivan, William J. Lawrence and William Monroe and tried, convicted and sen-

tenced for the robbery of said bank.   January 27, 1896, the
bill of interpleader was filed to have determined who had
earned and was entitled to said reward, and at the October
term, A. D. 1896, the court decreed that after the payment
of the costs the balance remaining should be equally divided
between said Eltzroth, Horn and Murphy, from which
decree Eltzroth, Ensminger and May prosecute this appeal.

HAND & HAND, attorneys for appellants; RICKS & CREIGH-
TON, of counsel.

N. F. ANDERSON, attorney for appellees.

There can be no claim for services when they are rendered
in ignorance of the reward.   Chicago & A. R. R. Co. v.
Sebring, 16 Ill. App. 181; Marvin v. Treat, 37 Conn. 96;
Clark on Contracts, 57 and 58.

" To the existence of a contract there must be mutual
assent, or in another form of offer and consent to the offer
*  *′  *   The consent is vital.   Without that, there is no
contract.   How, then, can there be consent or assent to that
of which the party has never heard?"   Fitch v. Snedaker,
38 N. Y. 248.

MR. PRESIDING JUSTICE HARKER DELIVERED THE OPINION
OF THE COURT.

Eltzroth contends that he is entitled to the entire reward
while Ensminger and May contend that they are entitled to
share it with him, and that neither Horn nor Murphy are
entited to any part of it.

A careful examination of the record satisfies us with the
judgment of the court below.

All that was done by Ensminger and May up to the time
that Horn and Murphy were called upon to go to Taylor-
ville to identify the prisoners, was done in ignorance of
the reward.   It is a well settled doctrine that there can
be no claim for services when they are rendered in igno-
rance of the reward.   The reason of the doctrine is founded
upon the principle that to the existence of every contract

there must be mutual assent. There can be no assent to that of which the party has never heard.

The arrests made by them were in discharge of their duties as a police officer and a watchman. After the identification of the robbers there was nothing done by them toward securing their conviction other than what could have been required of them as witnesses.

Although Horn and Murphy did not know of the robbery and the reward when a description of the three suspicious looking men who boarded the train was furnished, and would not, therefore, be entitled to the reward for that service, yet their going voluntarily to Taylorville to identify the prisoners and the further assistance they gave Eltzroth in fastening the crime upon them were all with the view on their part of sharing in the reward. They co-operated with Eltzroth and were certainly as much entitled to the reward as he was. Judgment affirmed.